[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court finds the following facts to have been proven at the hearing on the defendant's Motion to Rectify the Record by Reconstructing Missing Portion of Transcript:
The defendant, Gilbert Ely, III, was convicted by a jury in the Hartford/New Britain Judicial District of four counts of assault on a peace officer. Jury selection occurred on April 29 and 30, 1993, and on May 3, 4 and 5, 1993. The presentation of evidence, summations, the charge to the jury and jury deliberations took ten court dates, occurring on May 7, 10 through 13, and 17 through 21, 1993. The defendant was sentenced on July 2, 1993. The transcript submitted to the Appellate Court consists of 2,885 pages, of which 1,792 pages were devoted to the evidentiary portion of the trial, summations, jury instructions, verdict and sentencing proceedings.
The trial transcript reflects that a portion of the trial was not recorded. The failure to tape the proceedings began at page 41 of the May 12, 1993 transcript, immediately following the notation that the previous question was played back. Apparently, the court recording monitor pressed the wrong button after playing back an earlier portion of the proceedings. According to the monitor, the gap in the transcript occurred when tape number one of the dual tape recording system stopped, and tape number two failed to record the proceedings. The taping of the trial resumed after a recess that occurred from 11:25 to 11:40 A.M., on May 12, 1993.
During the trial, the State called Special Deputy Sheriff Philip Varnum, as a witness. His direct examination began on the afternoon of May 11, 1993. The State did not finish its examination of Varnum that day. The following day, May 12, 1993, Varnum's testimony was interrupted by the testimony of Dr. Thomas Turbiak, who testified for the State out of order. Turbiak's testimony concluded at 10:46 A.M. and the State resumed its direct examination of Varnum at that time. Varnum's direct examination concluded at 11:04 A.M. and cross CT Page 4387-b examination began then.
During cross-examination of Varnum, at approximately 11:09 A.M., counsel for the defendant asked Varnum the following question:
 "Do you recall September 13th, 1991, when he [the defendant] was beat up downstairs in lock up?"
The State objected to this question and argued to the court that Varnum would have no personal knowledge of the September 13, 1991 incident because he was not assigned to the courthouse on that day. At that point, the jury and Varnum were excused from the courtroom so that the court could hear legal argument on the State's objection. During the argument, the prosecutor asked that the question at issue be played back by the court monitor. The question was played back at approximately 11:11 A.M. It was at this point, and for the next fourteen minutes, that the machine did not record the proceedings. Consequently, there is no verbatim transcript of the trial proceedings from approximately 11:11 A.M. until 11:25 A.M.
After the playback, the court heard approximately two additional minutes of argument. The State's objection concerned the form of the question. The prosecutor believed that defense counsel had asked Varnum "do you recall" the September, 1991 incident, while defense counsel thought he had asked Varnum "did you know" about the incident. The playback of the tape recording supported the prosecution's argument. The court sustained the State's objection to the form of the question and ruled that the question should be rephrased. The State then objected to the word "beaten" in the question, arguing that such allegations were in dispute. Defense counsel responded that he had photographs of the defendant showing that he had sustained injuries. The court sustained the State's objection to the phrasing of the question.
Thereafter, the testimony of Varnum resumed in the presence of the jury. Cross-examination resumed at 11:16 A.M. and lasted less than two minutes. Defense counsel withdrew the question, "do you recall September 13, 1991, when he was beat up downstairs in lock up," and rephrased the question, asking Varnum whether he had any "knowledge" of the September CT Page 4387-c 13, 1991 incident. Varnum responded, that he had "no knowledge of [the] incident." (See, Defendant's Ex. B, 2-115). The trial judge's notes reflect that Varnum testified on cross-examination that he "never learned that defendant had been injured 9/91." (See, Court Ex. 2, P. 55). Therefore, the court finds that Varnum testified that he had no knowledge of the September 13, 1991 incident to which defense counsel was referring.
Varnum also testified during cross-examination that he had not heard about the defendant filing a notice of intent to sue over the September 13, 1991 incident. (See, Court Ex. 2, p. 55). Additionally, Varnum was asked one question regarding State's trial exhibit #1, which was a large engineering map of the police lockup. There was also testimony about an "altercation against the wall," and that "Roberts was against the wall." Defendant's Ex. B, at 2-134; Court Ex. 2. There were no objections during this portion of the questioning by defense counsel. Indeed, no line of questioning of Varnum was precluded by the court. (See, March 28, 1995 transcript, pp. 56-59).
The State's redirect examination of Varnum is also missing from the transcript. The redirect examination began at approximately 11:17 A.M. and lasted approximately three minutes. During redirect examination, the State asked Varnum questions concerning defendant's trial exhibit 4, which was a signed and sworn statement of Philip Varnum, dated March 16, 1992. Defense counsel had earlier moved the statement into evidence during cross-examination of Varnum. During the redirect examination, defense counsel objected to the State's phrasing of a question, and the state rephrased it. Varnum was also asked questions such as, "is this your statement?" "recall?", and a question about putting "other prisoners downstairs." Defense counsel did not object to any of these questions. There was also testimony that there" was [a] `struggle' before [sic] grabbed [the] defendant." (See, Court Ex. 2, p. 56).
The defendant's recross examination of Varnum is also missing from the transcript. The recross examination began at approximately 11:20 A.M. and lasted approximately one minute. Varnum was asked by defense counsel to read his March 16, 1992 signed and sworn statement. Attorney Kornbrath questioned CT Page 4387-d Varnum about his use of the word "sucker-punch" during his trial testimony and the fact that this phrase was not included in his written statement. Defense counsel tried to elicit from Varnum testimony to the effect that what occurred on March 16 was not a situation where the sheriffs had their hands to their sides pleading with the defendant to go into the cell and then the defendant sucker-punched him. Defense counsel tried to elicit from Varnum that the defendant was forcibly grabbed by a number of sheriffs before punches were thrown.
Varnum denied that he had committed perjury during the trial. No objections were made during the recross examination of Varnum. Defense counsel was not restricted by the court in asking any questions regarding Varnum's March 16, 1992 written statement. Indeed, Varnum's written statement was admitted for substantive purposes under State v. Whelan.
The State's re-redirect examination of Varnum is also missing from the trial transcript. The re-redirect examination began at approximately 11:21 A.M. and lasted approximately fifteen seconds. During these fifteen seconds, the State asked Varnum how long the fight had lasted and he replied that it lasted from thirty seconds to one minute. Varnum testified that it took him less than five minutes to complete his written statement. No objections were made during the re-redirect examination.
Special Deputy Sheriff Anthony Palmieri testified after Special Deputy Varnum and a portion of his testimony is also missing from the trial transcript. After Palmieri was sworn, the prosecutor made a reference to the March 16, 1992 prison list. The discussion regarding the prison list occurred before Palmieri began his testimony. After the discussion about the prison list, the court took its morning recess, at approximately 11:25 A.M. When the trial resumed, at approximately 11:43 A.M., the tape recorder was working properly. The direct examination of Anthony Palmieri by the State began at 11:40 A.M., beginning at digit 2-412. Palmieri's entire testimony was transcribed.
There is a counting mechanism on the recording machine that recorded the trial proceedings. The missing portion of the transcript in this case consists of 412 digits on the CT Page 4387-e counting mechanism. The counting mechanism counts 32 digits per minute, 16 digits per half minute and 8 digits per fifteen seconds. Therefore, 412 digits equals approximately 13 minutes of missing transcript, and approximately 13 pages of transcript.
While monitoring the taping of court proceedings, the monitor in this case made handwritten notes which would assist her in locating testimony to be played back and to locate issues for the purpose of transcription. The notes, however, were not intended to be, nor are they in fact, a complete record of the proceedings. The monitor could not take notes of every question asked or answer given during the 13-14 missing minutes of the proceedings. Instead, she attempted to note something every 10-15 digits, particularly when an argument or objection was raised.
BY THE COURT,
Espinosa, J.
CT Page 4388